IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 708-710 MARKET ST, LLC, | No. 4:25-CV-00597 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| BOROUGH OF BERWICK and NICOLL OLIVER, | |
| Defendants. | |

**MEMORANDUM OPINION**

**DECEMBER 30, 2025**

## I.   BACKGROUND

On June 23, 2025, Plaintiff 708-710 Market St, LLC ("Plaintiff"), filed a three-count amended complaint against the Borough of Berwick ("Borough") and Nicoll Oliver ("Oliver") (collectively, "Defendants").[1]

On July 15, 2025, Defendant Borough filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[2] The motion is now ripe for disposition; for the reasons that follow, it is granted. However, Plaintiff will be provided leave to amend the complaint.

---

[1]   Doc. 19 (Amend. Compl.). Plaintiff filed this amended complaint by consent.
[2]   Doc. 21 (Mot.).

## II.     DISCUSSION

### A.     Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[3] and *Ashcroft v. Iqbal*,[4] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[6]

When deciding a motion to dismiss, a court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[7] Normally, to consider anything beyond those sources, a motion to dismiss must be

---

[3]  550 U.S. 544 (2007).
[4]  556 U.S. 662 (2009).
[5]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[6]  *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[7]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

converted to a motion for summary judgment.[8]  But consideration of materials outside the complaint is not completely barred on a Rule 12(b)(6) motion.  Courts may consider any documents that are integral or explicitly relied upon in the complaint.[9]  "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[10]  "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[11]  It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document.[12]

In this matter, the Court finds that these conditions have been met for several documents, and will consequently consider the exhibits attached to Plaintiff's complaint, including the notices, as they appear to be integral to the complaint and Defendant Borough has submitted identical notices.[13]  The Court will also take judicial notice of the International Property Maintenance Code ("IPMC") at large,

---

[8] *See* FED. R. CIV. P. 12(d).
[9] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).
[10] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).
[11] *Id.*; *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).
[12] *Faulkner*, 463 F.3d at 134.
[13] *See* Doc. 19-1 (Exhibit A); Doc. 26-2; Doc. 19-3 (Exhibit C); Doc. 26-5; Doc. 19-4 (Exhibit D); Doc. 26-8; Doc. 19-5 (Exhibit E); Doc. 26-7.

as adopted by the Borough with amendments,[14] as it is a publicly available code.[15] The Court will not consider Defendant's other submissions to avoid turning the instant motion into a summary judgment determination.

### B.     Facts Alleged in the Amended Complaint

The facts alleged in the amended complaint, which this Court must accept as true for the purposes of this motion, are as follows.

The Plaintiff limited liability company owns real estate, namely a duplex, located at 708-710 Market Street, Berwick, Columbia County, Pennsylvania 18603 ("the Property").[16] The managing member of the LLC, James Daubert ("Daubert") has owned the property since April 2024, with Daubert residing in one unit and his family members residing in the second unit.[17]

The Borough followed an amended version of the IPMC, adopted in whole with some amendments laid out in Ordinance No. 2023-02 ("Ordinance 02") and Ordinance No. 2024-05 ("Ordinance 05") (collectively, "the Ordinances"). These three policies provide that condemnation procedure in the Borough should be as follows. A "code official" shall be appointed to enforce the standards in the code, with authority to interpret and adopt policies in line with the intent and purpose of

---

[14] Doc. 19-1 (Exhibit A) (adopting the IPMC in whole with only the amendments laid out in this exhibit).
[15] 2018 International Property Maintenance Code ("IPMC"), https://codes.iccsafe.org/content/IPMC2018P2/chapter-1-scope-and-administration.
[16] Doc. 19 at ¶ 7.
[17] *Id.* at ¶¶ 8-11.

the code.[18] This official "shall make all of the required inspections," and has authority to make inspections at reasonable times with notice requirements.[19] "[W]henever the code official determines that there has been a violation of this code or has grounds to believe that a violation has occurred, notice shall be given."[20] "Any person failing to comply with notice of violation or order served . . . shall be deemed guilty of a summary offense or civil infranction . . . [and if] the notice of violation is not complied with, the code official shall institute the appropriate proceeding."[21] The IPMC provides that, "[u]pon failure of the owner . . . to comply with the notice provisions within the time given, the code official shall post on the premises . . . a placard bearing the word "Condemned."[22] Ordinance 05 allows for "removal of a condemnation placard" from a property only when "it has been satisfactorily demonstrated to the code official" that the building no longer has any defects warranting condemnation.[23] The IPMC also sets out a variety of standards for property maintenance, some of which are amended or re-enumerated in Ordinance 02.[24]

On or about October 22, 2024, Code Official Oliver issued a Notice of Violation letter to Plaintiff and its occupants, which advised that the defects on the

---

[18] IPMC 103.2, Appointment; IPMC 104.1, General.
[19] IPMC 104.2, Inspections; IPMC 104.3, Right of Entry.
[20] Doc. 19-1 (Exhibit A, Ord. 02) at 3.
[21] *Id.*
[22] IPMC 108.4, Placarding. This section was adopted unamended by the Ordinances.
[23] *Id.* at ¶¶ 12-13, Doc. 19-2 (Exhibit B).
[24] Doc. 19-1.

5

property would result in the property being condemned and declared unfit for human habitation unless brought into compliance by November 22, 2024.[25] This letter was not received by occupants until November 1, 2024.[26] The violations alleged in this letter were "a) presence of garbage and rubbish around the Property; b) disrepair of the roof; c) disrepair of the gutters; and d) over occupancy exceeding the allowed capacity."[27] This letter required an inspection by a Borough official to lift the condemnation, with such inspection to be scheduled by Plaintiff, and advised Plaintiff of the right to appeal the decision to the Code Appeals Board before the compliance date within twenty days of the decision.[28]

Before the compliance date, Plaintiff replaced a portion of the roof, removed the gutters, organized the yard "since there was no garbage or rubbish, as those terms are defined by the IPMC," and confirmed the property's residents were within the occupancy limit.[29]

On the compliance date of November 22, Oliver came with another code official for the Borough and two police officers to advise the occupants that the building was condemned.[30] Daubert informed the officials that the issues had been addressed, but the officials still ordered them to vacate the premises.[31] The officials

---

[25] *Id.* at ¶ 14.
[26] *Id.* at ¶ 16.
[27] *Id.* at ¶ 14; Doc. 19-3 (Exhibit C) at 2.
[28] Doc. 19-3 at 2.
[29] Doc. 19 at ¶ 18.
[30] Doc. 19 at ¶ 19.
[31] *Id.* at ¶¶ 19-20.

condemned the Property by placing condemnation placards.[32] Plaintiff avers that Defendants did not ever conduct an interior inspection of the Property.[33]

On December 13, 2024, Oliver issued another notice of violation for the same four defects, and informed Plaintiff that, if Plaintiff disagreed with the determination that the roof must be replaced entirely, it should submit a written report from a licensed structural engineer.[34] On the same day, Oliver issued another violation notice to Plaintiff because the natural gas utility was shut off to the property, despite the Property having electric heaters.[35] Again, this notice contained a provision allowing for appeal.[36] Three days later, Plaintiff restored the flow of natural gas and had an inspector inspect the roof repairs.[37]

### C.   Analysis

Plaintiff brings three counts against both Defendants, all under 42 U.S.C § 1983; the first and second counts claim deprivation of procedural and substantive due process rights afforded by the Fourteenth Amendment while the third claims unlawful seizure in violation of the Fourth Amendment.[38] While Plaintiff has styled the second count as a *Monell* violation, it is well established that the only avenue to

---

[32] *Id.* at ¶ 21.
[33] *Id.* at ¶ 30.
[34] *Id.* at ¶ 22.
[35] *Id.* at ¶¶ 23-25.
[36] Doc. 19-5 (Exhibit E) at 2.
[37] *Id.* at ¶¶ 26-27.
[38] *Id.* at 7, 10, 12.

sue a municipality under § 1983 is through *Monell*'s framework.[39] "For this reason, the Court will address Plaintiffs' claims against [the Borough] in Counts I and [III] as attempting to state a Monell claim against [the Borough]."[40]

Notably, only Defendant Borough moved to dismiss the action; parties seem to be in agreement that Defendant Oliver has made no such motion.[41] Accordingly, the Court will only address the claims as to the Borough of Berwick, and not those against Defendant Oliver.

A *Monell* claim can take the form of four avenues;[42] the one relevant here, as it is the one Plaintiff advances, is that of a formal policy officially promulgated or adopted by a municipality. Plaintiffs that proceed under a municipal policy theory must demonstrate "the existence of 'an unconstitutional municipal policy' in order to prevail."[43] Additionally, "to prevail on a *Monell* claim, it is not enough to simply

---

[39] *Arcuri v. Cnty. Of Montgomery*, No. 20-5408, 2021 WL 1811576, at *6 n. 11 (E.D. Pa. May 6, 2011) ("Monell provides the only mechanism to state a claim under Section 1983 against municipal entities"); *Monell v. Dept. of Social Servs. Of City of New York*, 436 U.S. 658, 694-95 (1978).

[40] *Arcuri*, 2021 WL 1811576, at *6 n.11.

[41] Doc. 21 (Mot. to Dismiss) at 1 (requesting only "the dismissal of the action against the Borough of Berwick"); at ¶ 7 ("Defendants move to dismiss Plaintiff's Complaint, against the Borough only."); Doc. 31 (Br. in Opp.) at 8 ("[T]he Code Official has not filed a motion to dismiss the claims of constitutional violations asserted by the LLC.").

[42] *DeRaffele v. City of Williamsport*, 4:15-CV-02186, 2018 WL 2086074, at *2 (M.D. Pa. May 4, 2018) (Brann, J.). The avenues include 1) existence of a formal policy; 2) officials responsible for establishing final policy making a deliberate, specific decision; 3) custom or usage that is so widespread as to imply the constructive acquiescence of policymaking officials; or 4) claim of failure to train or supervise when it amounts to deliberate indifference. *Id.*

[43] *Biondino v. Bucks Cnty. Technical Sch. Auth.*, No. 24-1252, 2025 WL 2423736, at *3 (E.D. Pa. Aug. 21, 2025) (quoting *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019)).

prove the existence of an unconstitutional policy; that policy must also be shown to be the 'proximate cause' of the plaintiff's injuries."[44] Moreover, "in order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights."[45] In sum, to state a claim under *Monell*, a plaintiff must establish:

> (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom.[46]

Plaintiff argues that the Borough's adoption of the IPMC and accompanying Ordinances is the formal policy at issue that led to alleged constitutional violations.[47]

---

[44] *Id.*

[45] *DeRaffele*, 2018 WL 2086074, at *2; *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006).

[46] *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) (citing *Monell*, 436 U.S. at 692-94.

[47] Doc. 31 (Br. in Opp.) at 8, 10. While Plaintiff's complaint contains a scattershot of theories of liability, one of which is the failure to train employees in "constitutionally compliant enforcement of housing and property codes," *see* Doc. 19 ¶ 40(e), Plaintiff seems to explicitly abandon that theory in its brief. *See* Doc. 31 at 8 ("The adoption of section 108.1 by the Borough is the act that gave rise the constitutional violations committed that the Code Officer in this case"); at 9 ("The Borough did not merely fail to supervise a rogue employee; it codified the very discretion that led to the deprivation."); at 9-10 ("Unlike the 'failure-to-train' claim in [*Connick*], this case involves an official ordinance that itself caused the deprivation — no pattern of prior violations is required").

Policy or custom theories are separate and distinct from failure or inadequacy theories, with different showings required for each. *Forrest*, 930 F.3d at 105. In brief, parties conflate the two, referencing cases and standards relevant only for the failure to act theory of liability, such as the deliberate indifference framework. *See* Doc. 21 at 9; Doc. 25 at 2, 5; *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) ("Where, as here, the policy in question concerns a *failure to train* or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference.'") (emphasis added). As Plaintiff has repeatedly pointed to the IPMC as the official policy leading to its alleged constitutional violations, and as this policy is the basis for almost all of its arguments, the Court will address only the policy theory of liability and decline to analyze the failure to act or train theory.

9

Plaintiff argues first that the Bourgh's policy allowing a Code Official to condemn property without inspection or pre-deprivation hearing violated Plaintiff's right to procedural due process.[48] Plaintiff argues second that this same process amounted to an unreasonable seizure of the Property.[49] I will address each argument in turn.

### 1.    The Fourteenth Amendment's Right to Procedural Due Process

Plaintiff first argues that its rights to procedural due process as guaranteed by the Fourteenth Amendment were violated because the Borough Code Official, Oliver, did not, and was not required to, 1) inspect the house and 2) give Plaintiff an opportunity for a hearing.

For this claim, Plaintiff's chosen avenue to a *Monell* claim is to point to the adoption of the IPMC as the formal policy it alleges deprived him of procedural due process. Plaintiff alleges that, by allowing for condemnation of its property but not providing for a pre-deprivation hearing, the Borough's official policy did not provide sufficient due process. As the issue for this claim would be the official Borough policy or procedure, namely the IPMC and Ordinances, Plaintiff does appear to point to a policy that it alleges is the proximate cause of its deprivation, satisfying the *Monell* requirement.

---

However, even from a cursory review, the complaint seems woefully deficient of any facts tending to support a failure to act theory of liability in this case, especially facts demonstrating deliberate indifference.

[48] Doc. 31 at 8-11.
[49] Doc. 31 at 8.

However, Plaintiff has not adequately pled that this policy is unconstitutional or deprived him of due process. "The Fourteenth Amendment prohibits a state from 'depriv[ing] any person of life, liberty, or property, without due process of law.'"[50] This has been interpreted to require, fundamentally, an "opportunity to be heard," conducted at a "meaningful time in a meaningful manner."[51] Typically, "the hearing should come before the Government deprives a person of his property."[52] However, "[w]here there is 'the necessity of quick action by the State,' or where 'providing any meaningful predeprivation process' would be impractical, the Government is relieved of the usual obligation to provide a predeprivation hearing."[53] Therefore, courts must determine first "whether the Town was faced with circumstances in which it was required to provide a predeprivation hearing," and, if it did, then secondly whether "[the Borough] made adequate postdeprivation procedures available to [Plaintiff]."[54]

The Court need not delve into either inquiry, because Plaintiff failed to avail itself of the process available to it. In *Elsmere Park Club, L.P. v. Town of Elsmere*,

---

[50] *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008) (quoting U.S. Const. amend. XIV, § 1).
[51] *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)
[52] *Elsmere*, 542 F.3d at 417.
[53] *Id.* (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981).
[54] *Id.* In determining the first inquiry, that of whether an emergency applied to justify no predeprivation process, courts apply the deferential standard of "whether there is competent evidence supporting the reasonable belief that the situation presents an emergency and whether the defendant's actions are otherwise arbitrary or an abuse of discretion." *Atkins v. Borough of Pheonixville*, 336 F. Supp. 3d 511, 517 (E.D. Pa. 2018) (quotation from *Elsmere*, 542 F.3d at 417 omitted).

the Third Circuit explained that, when an alleged constitutional injury is the failure to provide adequate process, "no such injury could have occurred where [Plaintiff] has failed to take advantage of the procedures actually offered, at least not absent a showing that the process offered was 'patently inadequate.'"[55] This is because, unlike a takings claim where the injury occurs the moment property is seized, "a procedural due process violation does not occur until or unless the plaintiff has been deprived of adequate process."[56] "'A state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.'"[57] "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."[58] This is distinguishable

---

[55] *Elsmere*, 542 F.3d at 423 (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). *See also Bolick v. Northeast Indus. Services Corp.*, No. 4:14-CV-409, 2015 WL 540066, at *5-6 (M.D. Pa. Feb 10, 2015) (Brann, J.). To note, *Bolick* and similar other cases relied in part on the Supreme Court's rationale in the case *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, which held that plaintiffs seeking remedies for unlawful takings must avail themselves of process before suing in federal court. 473 U.S. 172, 195 (1985). *Williamson* was overruled by *Knick v. Township of Scott, Pa.*, which again addressed unlawful takings claims, but the Court distinguished due process claims from the holding. 588 U.S. 180, 196 (2019). Courts interpreting this issue specifically under *Knick* have found that plaintiffs pursuing procedural due process claims must still have availed themselves of the process to have a cognizable claim. *See Bruzga v. County of Boulder by and through Board of County Commissioners*, 795 F. App'x 599, 603 (10th Cir. 2020); *Kessler v. City of Key West*, No. 21-11069, 2022 WL 590892, at *9-10 (11th Cir. 2022). While not explicitly analyzing *Knick*'s effect on the matter, after the decision came down, the Third Circuit has continued to hold that a plaintiff seeking remedy for procedural due process violations "must avail himself of that process" before bringing a claim. *See, e.g., Williams v. Krasner*, No. 22-2984, 2023 WL 3773861, at *6 (3d Cir. June 2, 2023).

[56] *Bruzga*, 795 F. App'x at 603; *see also Butterline v. Bank of N.Y. Mellon Trust Co., Nat'l Ass'n*, 841 F. App'x 461, 464 (3d Cir. 2020); *Alvin*, 227 F.3d at 116.

[57] *Alvin*, 227 F.3d at 116 (quoting *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982).

[58] *Alvin*, 227 F.3d at 116.

from exhaustion requirements;[59] such a deficiency fights in the arena of ripeness or causation.[60]

Here, it appears that there were processes for Plaintiff to object to the proceedings, processes that were available pre-deprivation. The notices attached to Plaintiff's complaint all advise Plaintiff that it had a right to appeal the decision to the Code Appeals Board if filed within 20 days of the notice date, which would have been before the date on which the defects were required to be remedied.[61] Plaintiff states that this opportunity is insufficient, but does not explain why that appellate process is not the very "notice [and] meaningful opportunity to be heard" that it now says was not provided.[62]

Put simply, Plaintiff has not focused its pleadings on the actual process provided and its deficiencies as a constitutional matter. This is fatal given that the claim is one of procedural due process as opposed to a claim under the takings clause. Plaintiff pleads nothing about what steps it took, bureaucratically, to lift the

---

[59] *See id.*; *Elsmere*, 542 F.3d at 423. There is no exhaustion requirement for § 1983 claims.

[60] *See also Williams v. City of Johnstown*, No. 3:15-144, 2016 WL 1069100, at *6 (W.D. Pa. Mar. 17, 2016) ("a federal claim for procedural due process is not ripe for review unless and until a deprivation occurs pursuant to the procedures provided under the local or state code.").

[61] Doc. 19-3 (Exhibit C); Doc. 19-4 (Exhibit D). Exhibit E, the notice of condemnation for the gas, would have been a post-deprivation hearing as the date for remedy was before the appellate process would be invoked. Doc. 19-5. However, as the property was already condemned from the other violations, the issue is moot. Moreover, the IPMC at large, in a provision unamended by the Ordinances, stays enforcement of condemnation orders until an appeal is heard. IPMC, 111.8, Stays of Enforcement.

[62] Doc. 31 at 11.

condemnation. Plaintiff pleads that it cleaned up the property,[63] and had an engineer inspect the roof,[64] but, on the pleadings, seemingly never contacted the Borough about these efforts nor reached out to schedule an inspection.[65] At the very least, Plaintiff has not pled facts from which the Court could conclude that the processes available to it were "patently inadequate."[66] Indeed, the Court knows nothing about this appellate process because Plaintiff has not explained it or its alleged deficiencies.

Therefore, the claim as pled falls to the ground for Plaintiff's failure to utilize the process provided. Defendant's motion to dismiss Plaintiff's procedural due process claims against the Borough is granted, and these claims are dismissed.

"The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[67] But the law in the Third Circuit is clear that leave to amend should be "freely given" regardless of whether leave is specifically requested.[68] Plaintiff will

---

[63] Doc. 19 at ¶ 29.
[64] *Id.* at ¶ 28.
[65] Doc. 19 at ¶¶ 23-30. The notices advise that an inspection by a Borough Official will be required before condemnation is listed and require the applicant to contact the Borough to schedule such an inspection. Doc. 19-3. Plaintiff does not plead that it did so.
[66] Alvin, 227 F.3d at 116.
[67] *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).
[68] *Id.* (quoting Fed. R. Civ. P. 15(a)).

therefore be provided leave to amend this pleading to address any deficiencies in the process provided to it by the Borough.[69]

### 2. The Fourth Amendment's Right to be Free from Unreasonable Search and Seizure

Plaintiff additionally claims that the condemnation of the Property, and the order for occupants to vacate, was a violation of the Fourth Amendment's right to be free from unreasonable search and seizure.[70]

The Fourth Amendment provides that individuals shall not be subject to "unreasonable searches and seizures."[71] The touchstone of reasonableness is "'the ultimate standard under the Fourth Amendment,' which entails 'a careful balancing of governmental and private interests.'"[72] Defendant does not contest that condemning the property and ordering occupants to vacate is a seizure,[73] and the remaining inquiry is whether Plaintiff has shown such a seizure was unreasonable.[74]

---

[69] *Cf Para v. City of Scranton*, No. 3:CV-06-2432, 2008 WL 2705538, at *14-15 (Pa. M.D. July 10, 2008) (where the plaintiff appealed but challenged the sufficiency of the appellate process, as his building was demolished before the hearing).

[70] Doc. 19 at 12. To note, neither Plaintiff nor Defendant analyzes the applicable law for the Fourth Amendment claim. Should Plaintiff re-plead, parties are instructed to provide adequate support and analysis for the disputed legal issues.

[71] U.S. CONST. AMEND. IV.

[72] *Jaramillo v. City of Coatesville*, No. 19-CV-4936, 2023 WL 5635640, at *8 (E.D. Pa. Aug. 31, 2023) (quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)).

[73] *See also Soldal*, 506 U.S. at 61 ("We fail to see how being unceremoniously dispossessed of one's home in the manner alleged to have occurred here can be viewed as anything but a seizure invoking the protection of the Fourth Amendment.").

[74] *Verdier v. Borough*, 796 F. Supp. 2d 606, 619 (E.D. Pa. 2011); *Duffy v. Kent Cnty Levy Ct.*, 591 F. App'x 41, 45 (3d Cir. 2014); *Deiter v. City of Wilkes-Barre*, 2:16-CV-132, 2021 WL 2020589, at *14 (M.D. Pa. May 19, 2021) (denying summary judgment as the disputes went to whether the seizure of Plaintiff's property was reasonable).

Whether this seizure is reasonable is a tricker question. "Authority is sparse on when it is reasonable for municipal officials to seize buildings based on concerns of code violations, safety hazards, or disputed ownership."[75] Indeed, in surveying the field, a variety of considerations have been elucidated to use when determining what is reasonable. The Third Circuit has expressed that municipal seizures of buildings for lack of compliance with the applicable housing code are generally considered reasonable.[76] Moreover, at least one court has held that a property seizure is reasonable where a city was either acting in an emergency situation or acting pursuant to their own ordinances and procedures.[77] Some courts look to the procedural due process provided, as "a municipality's adherence to standards comporting with due process 'suggests the Fourth Amendment reasonableness' of the abatement."[78] The main factors courts consider, from a survey of applicable law are: whether an emergency existed that necessitated quick action by the state[79];

---

[75] *Jaramillo*, 2023 WL 5635640, at *8.

[76] *Gardner v. McGroarty*, 68 F. App'x 307, 312 (3d Cir. 2003) ("Where a building is seized because of the danger it poses and adequate recourse is provided to challenge any action taken by the local government, the seizure does not violate the Fourth Amendment."); *see also Jaramillo*, 2023 WL 5635640 at *8-9; *Duffy*, 591 F. App'x at 45.

[77] *Para*, 2008 WL 2705538, at *16 ("[I]f the action taken by the Defendants was taken in an emergency situation or their actions adhered to their own ordinances or procedures, their actions would not violate the Fourth Amendment.").

[78] *Ebert v. Township of Hamilton*, No. 15-7331, 2018 WL 3772677, at *7 (D.N.J. Aug. 9, 2018) (quoting *Ferreira*, 56 F. Supp. 3d 211, 231 (E.D.N.Y. 2014).

[79] *See, e.g., Duffy v. Kent County Levy Court*, 591 F. App'x 41, 45 (3d Cir. 2014); *Deiter*, 2021 WL 2020589, at *14 (denying summary judgment and describing the issues as whether "competent evidence existed to justify Defendants['] emergency demolition of [Plaintiff's] home, or whether Defendants acted arbitrarily"); *Para*, 2008 WL 2705538, at *16-17; *DeRaffele v. City of Williamsport*, No. 4:15-CV-02186, 2016 WL 11200711, at *8 (M.D. Pa.

whether the seizure was pursuant to municipal code[80]; whether the defendant received due process to challenge the seizure[81]; and whether there is other evidence that the seizure was made arbitrarily or without grounds.[82]

However, regardless of whether a violation of the Fourth Amendment actually occurred, Plaintiff would still need to successfully plead the elements of a *Monell* claim. As discussed above in some detail, plaintiffs that proceed under a municipal policy theory must demonstrate "the existence of 'an unconstitutional municipal policy'" that proximately caused the alleged injury.[83] "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict"[84] or otherwise "acquiesce[s]" in the adoption of the same.[85] Plaintiff has not established that the IPMC or Ordinances constituted a Borough policy of allowing individuals to condemn houses without grounds for doing so. On the contrary, the IPMC clearly contemplates inspections, as Section 104.2, adopted unamended by the Borough,[86]

---

Oct. 3, 2016) (Schwab, M.J.) *report and recommendation adopted*, No. 4:15-CV-02186, 2018 WL 2086074; *Gardner*, 68 F. App'x at 312.

[80] *Para*, 2008 WL 2705538, at *16 ("One test for reasonableness is a City's adherence to its own ordinances and procedures.").

[81] *Duffy*, 591 F. App'x at 45; *Jaramillo*, 2023 WL 5635640, at *8-9; *Gardner*, 68 F. App'x at 312; *Ebert*, 2018 WL 3772677, at *7.

[82] *See Thompson v. Armbruster*, No. 1:13-CV-3885, 2015 WL 853769, at *14 (M.D. Pa. Feb. 26, 2015); *Deiter*, 2021 WL 2020589, at *14.

[83] *Biondino v. Bucks Cnty. Technical Sch. Auth.*, No. 24-1252, 2025 WL 2423736, at *3 (E.D. Pa. Aug. 21, 2025) (quoting *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019)).

[84] *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996))

[85] *Oaks v. City of Philadelphia*, 59 F. App'x 502, 504 (3d Cir. 2003).

[86] Doc. 19-1.

states that the "code official shall make all of the required inspections."[87] Additionally, Section 107.1, also adopted unamended though noted in Ordinance 02,[88] provides that "[w]henever the code official determines that there has been a violation of this code or has grounds to believe that a violation has occurred," the official shall give notice of the violation to the property.[89] Section 106.3 provides that proceedings may be instituted against a person "failing to comply" with the notice.[90] Moreover, Ordinance 05 changed the requirements in Section 108.4.1, Placard Removal, to allow for removal of placards when it has been "satisfactorily" demonstrated to the code official that the property is free of defects.[91]

None of these provisions imply that the Code Official may condemn houses without any reasonable grounds to do so. The Court has not found, and Plaintiff has not provided, any cases with courts holding as much. In fact, in reading the statute, it is clear that the IPMC and the version adopted by the Ordinances are meant to provide condemnation when a structure has condemnation-worthy defects, not on the whim of a municipal official. At the very least, the IPMC and Ordinances do not explicitly allow for condemnation of a structure without any grounds to do so.[92] Therefore, Plaintiff would need to plead sufficient facts to show a Borough custom

---

[87] IPMC 104.2, Inspections.
[88] Doc. 19-1.
[89] IPMC 107.1, Notice to Person Responsible
[90] IPMC 106.3, Prosecution of Violation, Doc. 19-1.
[91] Doc. 19-2.
[92] This is fatal for a *Monell* claim, because if Code Official Oliver was not acting pursuant to an official policy or custom, there can be no liability for the Borough.

of interpreting the IPMC and Ordinances to allow for condemnation without reasonable grounds.

A custom is established by "'practices by state officials that amount to entrenched behavior in the municipal employees.'"[93] A *Monell* custom theory must be so "manifest or widespread as to imply the constructive acquiescence of policymaking officials."[94] Plaintiff has not pled sufficient facts from which this Court could conclude that the Borough had a widespread custom of condemning houses without adequate grounds. Indeed, the only facts Plaintiff has pled are those relevant to the instant condemnation of the Property, as opposed to facts tending to show a pattern over several different instances. This cannot constitute a custom so "manifest and widespread" as to imply the Borough constructively "acquiesce[ed]" in its adoption.[95]

Because Plaintiff has not pled an unconstitutional policy or custom promulgated by the Borough that proximately caused a violation of its rights, Defendant's motion to dismiss shall be granted. Plaintiff will be provided leave to amend.[96]

---

[93] *Murphy v. Doe Police Detective #1*, No. 20-2230, 2021 WL 4399646, at *5 (E.D. Pa. Sept. 27, 2021) (quoting *Ekwunife v. City of Phila.*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017).
[94] *DeRaffele*, 2018 WL 2086074, at *2.
[95] *Murphy*, 2021 WL 4399646, at *5.
[96] If Plaintiff chooses to amend, parties are instructed that the Court will not accept pleadings or briefing that lobs a mess of unsupported legal theories to the Court to rifle through. Parties must do more than "mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). The briefings lacked any substantive analysis

## III. CONCLUSION

Defendant's motion to dismiss pursuant to Rule 12(b)(6) is granted and the Court will dismiss all counts against the Borough. Plaintiff is granted leave to amend. As such, Plaintiff will be given fourteen days from today's date to file an amended complaint. If no amended complaint is filed, the action will be subject to dismissal with prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

of whether the IPMC and the Ordinances qualify as a "policy" allowing for condemnation without reasonable grounds and, if so, whether the policy meets the Fourth Amendment requirements for unreasonable seizure. In providing leave to amend, the Court is providing parties with the opportunity to address these issues.